108 F.3d 1376
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Steven L. ALLISON, Plaintiff-Appellant,
v.
COMMISSIONER OF SOCIAL SECURITY, Defendant-Appellee.
 No. 96-3261.
 United States Court of Appeals, Sixth Circuit.
 March 6, 1997.
 
 Before: KENNEDY, NELSON, and GODBOLD*, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is an appeal from a judgment upholding a denial of disability insurance benefits under Title II of the Social Security Act of 1935, 42 U.S.C. § 401 et seq. We conclude that the administrative record is not sufficiently developed to permit an informed decision as to whether the claimant is entitled to benefits for a discrete period of time during which he was undergoing a series of operations on his back. We further conclude that substantial evidence supports the denial of benefits for the period following the claimant's convalescence from his last operation. The judgment entered by the district court will be affirmed in part, and the case will be remanded for further proceedings.
 
 
 2
 * The claimant, Steven L. Allison, was injured at work on June 1, 1987, when a 55 gallon drum fell on him. After a brief hospital stay and three weeks' recuperation, Mr. Allison resumed his job as a loading dock foreman. He was plagued by persistent back pain, however, and he quit his job in December of 1987. He has not worked since that time, and his insured status expired on December 31, 1993.
 
 
 3
 Between December of 1988 and February of 1991, Dr. Arthur D. Steffee performed five separate operations on the thoracic region of Mr. Allison's spinal column. Mr. Allison's condition seemed to improve somewhat after each operation, but throughout this period he suffered bouts of pain, muscle spasms, and weakness and numbness in his left leg. Although the final surgery produced a successful spinal fusion, these maladies persisted.
 
 
 4
 After the accident, Mr. Allison experienced psychological problems. He was diagnosed with depression and various other disorders, including idiopathic pain disorder and hysterionic pain disorder. Some doctors opined that he tended to exaggerate his health problems, but none suggested that he was free of pain.
 
 
 5
 On February 7, 1992, Mr. Allison filed an application seeking disability insurance benefits from December 26, 1987. The Ohio state agency to which the claim was submitted denied benefits, whereupon Mr. Allison requested and received a hearing before the Social Security Administration. At the hearing, an administrative law judge heard testimony from Mr. Allison, Steven Allison, Jr. (the claimant's son), a psychiatrist, and a vocational expert.
 
 
 6
 On May 25, 1994, the ALJ issued a written decision denying benefits. Applying the five-step sequential disability evaluation procedure set forth in 20 C.F.R. § 404.1520, the ALJ made these findings: (1) Mr. Allison engaged in no substantial gainful activity during the relevant period; (2) Mr. Allison had the following severe impairments: status post lumbar fusions, adjustment disorder with depressed mood, chronic pain disorder, and substance dependence in partial remission; (3) these impairments did not meet and were not medically equivalent to any of the impairments considered per se disabling; (4) Mr. Allison could not perform his former work, but retained the capacity to perform light work; and (5) Mr. Allison could perform a significant number of jobs in the national economy. The ALJ also made these subsidiary findings: (1) Mr. Allison could lift twenty pounds occasionally and lesser weights frequently; (2) he could stand or walk three to four hours per workday in thirty-minute intervals; (3) he had no sitting impairment; and (4) the allegations that his impairments prevented him from working were not borne out by the objective medical evidence and did not meet the legal standard for evaluating subjective complaints of pain.
 
 
 7
 After the Appeals Council and the district court had denied relief, Mr. Allison perfected a timely appeal to this court. We must uphold the Commissioner's findings if they are supported by "substantial evidence"--that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g). We must do so, where warranted, even if substantial evidence also supports an opposite conclusion. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir.1994).
 
 II
 
 8
 Mr. Allison contends that, at a minimum, he is entitled to disability benefits for the "closed-end" period during which he underwent five corrective back surgeries. The government did not address this argument in its appellate brief. At oral argument, however, counsel for the government seemed to concede that a remand on this issue would not be inappropriate.
 
 
 9
 Disability benefits cannot be awarded absent an impairment that lasts for a continuous period of at least 12 months. See 42 U.S.C. § 423(d)(1)(A). Mr. Allison underwent five surgeries on his spinal column from December of 1988 until February of 1991, a span of 26 months. It seems to us that being subjected to five major operations--and, of course, convalescence after each operation--over a 26-month period raises a serious question as to whether the claimant was not disabled for some or all of this period. The agency did not adequately address this question.
 
 
 10
 As far as we can tell, the record before us does not indicate whether Mr. Allison was or was not impaired for a continuous one-year span. We shall therefore remand the case to let the agency determine, in the first instance, whether he was disabled for any continuous period of twelve months or more from the time of his first surgery until the end of the recovery period for his fifth surgery. We see no need for a remand with respect to the period subsequent to that time.
 
 III
 
 11
 Subjective complaints of disabling pain may support a finding of disability. Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). Our court has established a two-part test for assessing such complaints. See Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986). First, the claimant must show objective medical evidence of an underlying medical condition. Id. The parties agree that Mr. Allison has passed this part of the test. Second, the claimant must show that (1) the objective medical evidence confirms the severity of the alleged pain, or (2) the objective medical condition is of such a severity that it can reasonably be expected to produce the disabling pain alleged. Id. It is on this point that the parties differ.
 
 
 12
 We cannot fault the finding of the ALJ on the pain issue. Although Mr. Allison did have five operations and did undoubtedly suffer lower back and left leg pain, the objective medical evidence indicated a healed spinal fusion. Several doctors reported that medication alleviated Mr. Allison's pain. Moreover, some doctors who examined Mr. Allison suggested that he tended to exaggerate his pain. One reviewing physician, Dr. Rammohan, explicitly opined that Mr. Allison's subjective symptoms were disproportionate in severity or duration to his objective medical condition.
 
 
 13
 The ALJ had the benefit of hearing Mr. Allison testify about his pain, and the ALJ's assessment of the credibility of that testimony is entitled to great deference. Duncan, 801 F.2d at 852. The ALJ was also entitled to consider Mr. Allison's daily activities in evaluating the claims of pain. Blacha v. Secretary of Health & Human Servs., 927 F.2d 228, 231 (6th Cir.1990). Mr. Allison testified that he spent time working on cars, looking at cars, walking in a mall, and driving a van. We think the ALJ could reasonably have concluded that these activities were inconsistent with disabling pain.
 
 B
 
 14
 Mr. Allison contends that the testimony of his son, Steven Allison, Jr., was improperly ignored by the ALJ. In this connection Mr. Allison observes that not once in the twelve-page decision did the ALJ mention the testimony of the younger Allison.
 
 
 15
 Although lay testimony must be given "perceptible weight" where it is supported by medical evidence, Lashley v. Secretary of Health & Human Servs., 708 F.2d 1048, 1054 (6th Cir.1983), we are not convinced that the ALJ ignored the younger Allison's testimony. Mr. Allison, Jr., testified that his father was frequently upset or in a bad mood, had frequent nightmares, and sometimes fell when his left leg gave out. Nothing in the ALJ's decision conflicts with this testimony. The ALJ found that Mr. Allison did have severe physical and mental impairments--and this was the only part of the five-step sequential evaluation to which the testimony of Mr. Allison, Jr., was directly relevant. The ALJ rejected Mr. Allison's claim on the basis of a perceived ability to perform a significant number of jobs in the national economy--an issue on which the younger Allison was not qualified to speak and which he did not address. It is irrelevant that the ALJ did not discuss the younger Allison's testimony; neither precedent nor common sense requires written discussion of every single piece of evidence.
 
 C
 
 16
 Mr. Allison argues that the ALJ erred in finding him capable of performing the full range of light work. We decline to address this argument, for it is not critical to the ultimate determination of disability. The fifth and final step in the sequential evaluation process requires proof of specific jobs that the claimant can perform, not proof of a generic capacity to do heavy, light, or sedentary work:
 
 
 17
 "A finding of capacity to do light work does not constitute evidence that a person can engage in substantial gainful activity, nor is such a finding sufficient to rebut a prima facie case of disability. A claimant's capacity to perform work [must be] ... expressed, not in terms of a vague catch-all phrase such as 'light' work, but in terms of specific types of jobs." Hephner v. Mathews, 574 F.2d 359, 362-63 (6th Cir.1978).
 
 
 18
 It was a vocational expert's testimony that Mr. Allison could perform over two thousand specific jobs in Northeast Ohio. It was the ALJ's acceptance of this testimony that compelled a finding of no disability.
 
 D
 
 19
 Mr. Allison challenges the hypothetical question posed by the ALJ to the vocational expert. The hypothetical specified that the claimant had no restrictions on his ability to sit. Mr. Allison contends that this component of the question was contradicted by the medical evidence.
 
 
 20
 A vocational expert's answer to a hypothetical question may constitute substantial evidence that the claimant can perform specific types of jobs, but only "if the question accurately portrays [plaintiff's] individual physical and mental impairments." Varley v. Secretary of Health & Human Servs., 820 F.2d 777, 779 (6th Cir.1987) (quotations and citations omitted). There was clearly substantial evidence to support a sitting limitation, if the administrative law judge had decided to include one in his question. That there was substantial evidence to support the inclusion of a sitting restriction is irrelevant, however, if there was also substantial evidence to support the omission of such a restriction. Felisky, 35 F.3d at 1035.
 
 
 21
 Although it is a close question, we think the hypothetical question was supported by substantial evidence. We might view the matter differently if Mr. Allison's treating physician, Dr. Steffee, had reported a restriction on his patient's ability to sit--but Dr. Steffee did not do so. In contrast, a reviewing doctor, Dr. Rammohan, opined that Mr. Allison could sit for six hours per work day. Moreover, the ALJ had the benefit of observing Mr. Allison and hearing him testify about his daily activities. We think the ALJ could reasonably have concluded that these activities were not those of someone for whom sitting caused great pain.
 
 
 22
 The judgment is AFFIRMED in part and VACATED in part, and the case is REMANDED to the district court with instructions to have the agency conduct further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable John C. Godbold, United States Circuit Judge for the Eleventh Circuit, sitting by designation